J-S48033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

THE ESTATE OF JAMES P. LAY, III AND    :       IN THE SUPERIOR COURT OF
MRS. DARLENE M. LAY,

                                 :            PENNSYLVANIA
            Appellants        :
                                 :
              v.                   :
                                 :
JAMES D. McDONALD, JR. AND THE    :
McDONALD GROUP, LLP              :         No. 1969 WDA 2015

Appeal from the Order November 17, 2015
in the Court of Common Pleas of Erie County,
Civil Division, No(s):  12889-2012

BEFORE:  BOWES, DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED OCTOBER 13, 2016**

The Estate of James P. Lay, III ("the Lay Estate"), and Mrs. Darlene M. Lay ("Mrs. Lay") (collectively, "the Lays") appeal from the Order granting summary judgment against them and in favor of James D. McDonald, Jr., Esquire ("Attorney McDonald"), and the McDonald Group, LLP ("the McDonald Group") (collectively, "Defendants").  We affirm.

In its November 17, 2015 Opinion, the trial court set forth the history underlying the instant appeal, which we adopt as though fully restated herein.  **See** Trial Court Opinion, 11/17/15, at 1-2.  The trial court granted summary judgment in favor of Defendants and against the Lays.  Thereafter, the Lays filed the instant timely appeal.

The Lays present the following claims for our review:

I. Did the [trial court] err in failing to recuse itself from this case given that the litigants are/were both members of the Erie County Bar Association?

II. Did the trial court err in granting Defendants' Motion for Summary Judgment?

III. Did the trial court err in refusing to grant a stay in this matter pending resolution of the "[Derek] Allen" case ["the Allen case"] so damages could be proven of record?

Brief for Appellants at 4.

Initially, we are cognizant of our scope and standard of review:

Our scope of review of an order granting summary judgment is plenary. [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. ... Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the [fact-finder]. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

*DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 585-86 (Pa. Super. 2013) (citations and quotation marks omitted).

The Lays first claim that certain trial court judges improperly failed to recuse themselves from the case. Brief for Appellants at 11. The Lays

assert that "a sitting judge in his home county should not preside over a case involving two prominent members of the local bar." *Id.* Further, the Lays argue that "Judge [Fred] Anthony improperly permitted Attorney [Gary D.] Bax[,] of [the McDonald Group,] to provide his legal input into the case (as a represented party) over the Lays' counsel's objections, a clear indication of his willingness to fawn to the McDonald Group." *Id.* According to the Lays, Attorney McDonald and members of the McDonald Group "still practice and presumably socialize among the Erie [j]udges." *Id.* The Lays assert that the views of two judges involved in the case, *i.e.*, that they could decide the case impartially, are trumped by the perceived opinions of the public and the litigants. *Id.* at 12.

Before addressing this claim, we must determine whether the Lays preserved this issue for our review. "When circumstances arise during the course of a trial raising questions of a trial judge's bias or impartiality, it is still the duty of the party, who asserts that a judge should be disqualified, to allege by petition the bias, prejudice or unfairness necessitating recusal." *Reilly v. Southeastern Pennsylvania Transp. Auth.*, 489 A.2d 1291, 1299 (Pa. 1985). "A party seeking recusal or disqualification [is required] to raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred." *In re Lokuta*, 11 A.3d 427, 437 (Pa. 2011) (quoting *Goodheart v. Casey*, 565 A.2d 757, 763 (Pa. 1989)). Once a party has waived the issue, that party "cannot be heard to complain

following an unfavorable result." ***Commonwealth v. Stanton***, 440 A.2d 585, 588 n.6 (Pa. Super. 1982) (citations omitted).

Our review of the record discloses that the Lays failed to raise this claim before the trial court. Accordingly, it is waived. ***See*** Pa.R.A.P. 302(a) (stating that an issue cannot be raised for the first time on appeal); ***Lokuta***, 11 A.3d at 437 (recognizing that a party seeking recusal must raise the objection at the earliest possible moment).

The Lays next claim that the trial court improperly granted Defendants' Motion for summary judgment as to the Lays' claim that Attorney McDonald negligently failed to monitor the Allen case. Brief for Appellants at 13. According to the Lays, the trial court erred when it (a) ignored the report of Thomas T. Frampton, Esquire ("Attorney Frampton"); (b) applied the wrong standard on the issue of damages; and (c) ignored the testimony of Mrs. Lay and Craig Hartle ("Hartle"), a paralegal of James P. Lay, III's ("decedent") law firm ("the Lay Law Firm"). ***Id.*** at 13.

The Lays specifically direct our attention to the Pa.R.C.P. 1042.3(1) Certificate of Merit filed by Attorney Frampton. ***Id.*** at 14. In the Certificate of Merit, Attorney Frampton opined that,

> as to the professional negligence claims[,] there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work of [Attorney] McDonald, that is the subject of the Complaint, fell outside the acceptable professional standards and that such conduct was the cause in bringing about the stated harm. Relative to the [] Allen case, such conduct likely will be the cause in bringing about the stated harm.

- 4 -

Certificate of Merit, 8/16/13. In addition, The Lays rely on the testimony of Hartle that (a) the Allen case was one of the biggest in the Lay Law Firm; (b) Attorney McDonald allowed Thomas S. Talarico, Esquire ("Attorney Talarico"), to take the file; (c) Attorney McDonald never looked at the file; and (d) Attorney McDonald failed to play any role in how the file was handled. Brief for Appellants at 15. According to the Lays, the fact that Attorney Talarico later offered the case to Patrick Loughren, Esquire ("Attorney Loughren"), "is evidence that [Attorney Talarico] acknowledged [Attorney] Loughren's superior legal ability and perhaps his right to assume representation of [Michelle] Allen ["Mrs. Allen"]." *Id.* at 16.

In addressing Defendants' preliminary objections to the Lays' Second Amended Complaint, the trial court concluded that the Lays had failed to state a cause of action for professional negligence related to the Allen case. *See* Trial Court Opinion, 4/16/14, at 18-24. Upon review, we agree with the trial court's legal analysis and conclusion, as stated in its April 16, 2014 Opinion, and affirm the trial court's dismissal of this cause of action on this basis.[1] *See id.*

In challenging the grant of summary judgment, the Lays next argue that the trial court improperly dismissed their claim that Attorney McDonald

---

[1] To the extent that the Lays challenge the grant of summary judgment, related to the Allen case, based upon a theory of implied contract, we conclude that such claim lacks merit for the reasons stated in the trial court's November 17, 2015 Opinion. *See* Trial Court Opinion, 11/17/15, at 7-12.

negligently advised Mrs. Lay to pay obligations owed by the Lay Law Firm to PNC Bank ("PNC"). Brief for Appellants at 17. The Lays contend that PNC had no claim on the life insurance proceeds paid to Mrs. Lay for the death of decedent. *Id.* Therefore, the Lays argue, "[t]he life insurance proceeds were personal funds of [Mrs.] Lay that did not secure the PNC lines of credit[,] and [] Attorney McDonald's advice to her to pay off these obligations with the unsecured funds with no negotiations whatsoever was unreasonable." *Id.* The Lays contend Mrs. Lay was advised to take her insurance money and pay off PNC, to her financial detriment. *Id.* at 18.

In its Opinion, the trial court addressed this claim and correctly concluded that it lacks merit. *See* Trial Court Opinion, 11/17/15, at 4-6. We affirm on the basis of the trial court's Opinion with regard to this claim. *See id.*

The Lays next assert that the trial court improperly entered summary judgment as to their claim that Attorney McDonald negligently failed to monitor the cases handled by Attorney [Joe] Steele ["Attorney Steele"], of the Lay Law Firm. Brief for Appellants at 18. The Lays argue that the trial court erred in relying upon a release between Mrs. Lay, the Lay Estate and Attorney Steele, to which Attorney McDonald was not a party. *Id.* The Lays further assert that their claim is supported by Attorney Frampton's Certificate of Merit, "testimony," the Affidavit of Robert Garver, Esquire, and the unverified statement of Karen Benson. *Id.* at 19.

A claim of legal malpractice requires that the plaintiff plead the following three elements: employment of the attorney or other basis for a duty; the failure of the attorney to exercise ordinary skill and knowledge; and that the attorney's negligence was the proximate cause of damage to the plaintiff. **Kituskie v. Corbman**, 714 A.2d 1027, 1029 (Pa. 1998); **accord Steiner v. Markel**, 968 A.2d 1253, 1255 (Pa. 2009).

In the Second Amended Complaint, The Lays averred a negligence claim against Attorney McDonald based upon his alleged failure to monitor the cases he permitted Attorney Steele to handle, resulting in subsequent ligation against Attorney Steele. Second Amended Complaint, ¶¶ 43, 44(g). However, as the trial court stated in its Opinion,

> the record before this [c]ourt now contains almost no information concerning the nature and extent of [Attorney] Steele's representation of various clients of the Lay [L]aw [F]irm following [decedent's] death[,] and there is nothing to indicate that [Attorney] McDonald, acting in his capacity [as] attorney, was required to oversee [Attorney] Steele's performance[,] nor is there any indication that, if he had the duty to do so, he did so negligently….

Trial Court Opinion, 11/17/15, at 3. Our review confirms that there is no evidence that Attorney McDonald undertook a duty to monitor or oversee Attorney Steele's performance prior to Attorney's Steele's termination from the Lay Law Firm. Accordingly, we affirm the trial court's resolution of this claim on the basis of the trial court's reasoning, as set forth above, with the following addendum.

Our review of the record discloses that in October 2012, the Lay Law Firm and Mrs. Lay, as executrix of the Lay Estate, filed a lawsuit against Attorney Steele. The Complaint against Attorney Steele (the "Steele Complaint") alleged that, "[a]t the time of [Attorney Steele's] termination,[2] the parties had not reached an agreement to transfer ownership of any files to Attorney Steele …." Steele Complaint, ¶ 6 (footnote added). The Steele Complaint further alleged that Attorney Steele "unilaterally and wrongly took possession and asserted ownership of the [Lay] Law Firm's files, and began collecting attorney fees and costs in connection with those files, which fees and costs he has refused and continues to refuse to pay over to the [Lay] Law Firm." *Id.* at ¶ 7. Thus, the Steele Complaint was based upon conduct occurring *after* Attorney Steele's termination, on May 26, 2011. The record, however, discloses that Attorney McDonald was no longer counsel for Mrs. Lay, or counsel to or executor of the Lay Estate at the time of Attorney Steele's termination.

The undisputed evidence establishes that on May 25, 2011, *before* Attorney Steele's termination, the trial court approved Attorney McDonald's resignation as co-executor of the Lay Estate, and as counsel for the Lay Estate and Mrs. Lay. Trial Court Order, 5/25/11. Thus, there is no evidence, disputed or otherwise, that Attorney McDonald owed a duty to the

---

2 Attorney Steele testified that on May 25, 2011, he found a letter on his desk terminating his employment with the Lay Law Firm, effective May 26, 2011. Affidavit of Attorney Steele, 8/25/15, at ¶ 30.

Lays after Attorney Steele's termination (the time of the misconduct alleged in the Steele Complaint). Accordingly, the Lays are not entitled to relief on their claim related to Attorney Steele's actions following his termination.

Finally, the Lays claim that the trial court improperly refused to grant a stay pending the resolution of the Allen case, "so that damages could be proven of record[.]" Brief for Appellants at 20. The Lays claim that prior to his death, decedent had identified Attorney Loughren as his choice of competent counsel for the Allen case. *Id.* at 21. Following decedent's death, the Lays argue, Attorney McDonald improperly failed to introduce Attorney Loughren to Mrs. Allen, in order "to protect the legal rights of Mrs. Lay[.]" *Id.* The Lays assert that "the negligence of Attorney McDonald in allowing this case file to leave the Lay [Law Firm] prior to introducing Mrs. [] Allen to Attorney Loughren was conduct below the standard of a personal representative and attorney." *Id.* at 21-22. According to the Lays, a stay was necessary, pending the outcome of the Allen case, to itemize the damages resulting from Attorney McDonald's negligence. *Id.* at 22.

Our review of the record discloses that the trial court granted summary judgment against the Lays, as to their claim of negligence related to the Allen case, based, in part, upon the speculative nature of the damages. Trial Court Opinion, 11/17/15, at 11. In this regard, the trial court stated the following:

> It is the essence of [the Lays'] factual recitation that because [Attorney] Loughren is a better trial lawyer than [Attorney]

Talarico, and that [Attorney] Talarico is returning a lesser percentage of any award or settlement to the Lay [E]state, they will suffer a loss. Nothing could be more speculative. Indeed, the notion that there will be any damage[s] at all hinges not only on the generalized belief that the Allen case has legal merit, but also that [Attorney] Talarico's efforts will result in an outcome less favorable to the [E]state. Whether there is any loss to the Estate at all depends entirely on guess-work by assuming that one attorney will do a better job than another.

… [I]n this case, it would be necessary to predict the outcome of two actions[:] one prosecuted by [Attorney] Talarico and one pursued by [Attorney] Loughren, and to do so with the relative precision necessary to compare the results. Viewing the [Lays'] Second Amended Complaint as a whole, it is apparent that even if the averments of fact were proven at trial, [the Lays] would still be unable to recover damages because [the Lays] cannot establish actual harm.

Trial Court Opinion, 4/16/14, at 22. The trial court's reasoning is supported by the evidence of record, and we discern no error in this regard. *See id.* Consequently, a stay would not have resolved the speculative nature of predicting Attorney Talarico's performance and results in the Allen case, as compared to those of Attorney Loughren, and assessing damages on this basis. As a result, the Lays have established no right to relief on this claim.

For the foregoing reasons, we affirm the Order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

- 10 -

Date: 10/13/2016

THE ESTATE OF JAMES P. LAY, III : IN THE COURT OF COMMON PLEAS
and MRS. DARLENE M. LAY, : OF ERIE COUNTY, PENNSYLVANIA
    Plaintiffs :
  :
  :
v. :
  :
JAMES D. MCDONALD, JR. and THE :
MCDONALD GROUP, LLP :
    Defendants : NO. 12889-2012

## MEMORANDUM

### A.    PROCEDURAL HISTORY

James P. Lay, III, Esquire ("Mr. Lay") died testate on August 27, 2010. In his will he named James D. McDonald, Jr., Esquire ("Mr. McDonald" and/or "Defendant") and his wife, Darlene M. Lay ("Mrs. Lay" and/or "Plaintiff"), as co-executors of the Estate of James P. Lay, III ("Estate" and/or "Plaintiff"). Mr. McDonald and his firm, the McDonald Group, LLP ("McDonald Group" and/or "Defendant"), also acted as counsel for the Estate. In May 2011, Mr. McDonald resigned as co-executor and Mrs. Lay continued on as executrix of the Estate. In August 2012, the Estate filed a Petition for Surcharge seeking to have the court order Mr. McDonald to reimburse it for, among other things, failing to properly manage the assets of the Estate and overcharging the Estate for legal fees. A motion to withdraw the petition for surcharge with prejudice was granted by the court and an order was entered accordingly.

In 2012, the Estate and Mrs. Lay, apparently in a personal capacity[1], filed a civil action against Mr. McDonald and the McDonald Group setting forth four (4) causes of action. Thereafter, following an involved procedural history, the court granted certain preliminary

---

[1] It is not clear from the Complaint that Mrs. Lay is suing in her individual capacity, however, she claims that she was personally damaged by the actions of Mr. McDonald with regard to advice he allegedly gave her concerning the use of personal funds.

*APPENDIX "B"*

objections which had the effect of limiting the causes of action upon which the case could proceed.[2]

Now before this Court is the Defendants' Motion for Summary Judgment seeking to have judgment entered in their favor on the remainder of the case. It is noteworthy that the Defendants' initial motion for summary judgment was dismissed without prejudice to allow the Plaintiffs to complete their discovery and to otherwise come forward with the appropriate evidence in support of their civil action. While it is not clear as to whether the Plaintiffs actually conducted any discovery of any consequence, discovery is now closed and the record on summary judgment is complete.

## B.    SUMMARY JUDGMENT STANDARD

On summary judgment the threshold determination is whether there are any genuine issues of material fact in dispute. The facts and inferences derived therefrom must be viewed in a light most favorable to the non-moving party. *Lance v. Wyeth*, 624 Pa. 231 (2014). In ascertaining whether one is entitled to an entry of summary judgment, the court may rely on facts which are uncontested or proceed as though the facts suggested by the non-moving party are true. *Id.* In either instance, the court must then determine whether the factual record properly discerned in a summary judgment context entitles the moving party to judgment as a matter of law. *Id.* Here, the moving parties argue that the Plaintiffs, having the obligation to do so, have not come forward with evidence to support the allegations set forth in the Second Amended Complaint. Discovery having been closed, it was the Plaintiffs' burden to produce evidence of

---

[2]On July 11, 2013, the Honorable Fred Anthony entered a Memorandum and Order sustaining in part preliminary objections to the Complaint. On April 16, 2014, the Honorable John A. Bozza entered an Opinion and Order sustaining certain preliminary objections to the Second Amended Complaint further limiting the grounds upon which the case could proceed.

2

the facts essential to the survival of their cause of action in the context of a jury trial. *Bailets v. Pa. Tpk. Comm.*, 250 Pa. Lexus 1995.

## C.    DISCUSSION

1.    .Claim of professional negligence as an attorney concerning the failure to monitor cases handled by Attorney Joseph Steele.

A separate action was filed by Mrs. Lay and the Estate which has been resolved[3] and the Plaintiffs signed a general release, the provisions of which preclude them from further recovery with regard to the matters addressed in the lawsuit. On that basis it would appear that recovery for the same damages contemplated in that case are not available to Plaintiffs in this matter.

In addition, the record before this Court now contains almost no information concerning the nature and extent of Mr. Steele's representation of various clients of the Lay law firm following Mr. Lay's death and there is nothing to indicate that Mr. McDonald, acting in his capacity of attorney, was required to oversee Mr. Steele's performance nor is there any indication that, if he had the duty to do so, he did so negligently. Summary judgment will be granted accordingly.

2.    Professional negligence claim for improperly operating the Lay professional corporation and overcharging the Estate.

Aside from the other claims set forth below, the record contains no facts to support these allegations. In neither instance is there any information to indicate that the Defendants overcharged the Estate nor is there any factual support indicating that, in his role as

---

[3] Docket No. 11507–2012.

an attorney, Mr. McDonald negligently performed his duties with regard to the Lay professional corporation.

There are three (3) elements that must be established in a case alleging attorney malpractice: the retaining of the attorney, the failure of the lawyer to exercise ordinary skill and care and that the negligence was the proximate cause of damages. *Storm v. Golden*, 371 Pa. Super. 368, 538 A.2d 61 (1988). In order to sustain a claim of professional negligence in this case, it would be necessary for the Plaintiffs to produce expert testimony that opined that the conduct of Mr. McDonald in the exercise of his professional responsibilities fell below the standard of care for an attorney acting in such circumstances. *Id.* There is no such evidence in the record.

While there is in the record a certificate of merit, that document, while sufficient for its intended purpose, does not set forth an opinion stating to a reasonable degree of professional certainty that Mr. McDonald did anything wrong with regard to the way in which he operated the professional corporation or with regard to the fees he charged.

3. **The professional negligence claim for improperly advising Mrs. Lay to "pay an unsecured line of credit with PNC Bank, in which Mrs. Darlene M. Lay was not personally liable, in the amount of $425,000 from her own personal funds when she had no legal obligation to do so".[4]**

A review of the facts in the record indicates the following with regard to this issue:

a. Mr. Lay had arranged for two lines of credit which as of the date of his death had combined outstanding balances of approximately $400,000.

---

[4] Certain other claims set forth in paragraphs 41 and 42 appear to be matters that the Plaintiffs are not pursuing and for which there has been no discussion in the context of this Motion.

4

b.  These loans were secured by a mortgage applicable to the Lay law building, an asset of the Estate.

c.  The loans were personally guaranteed by Mrs. Lay as evidenced by signed guarantee agreements.

d.  The guarantee agreements provided that in the event of default Mrs. Lay was obligated to pay any outstanding balances.

e.  Mr. Lay's death constituted default pursuant to the loan agreements and Mrs. Lay was personally obligated to pay the loan balances.

f.  PNC Bank called in the loans following Mr. Lay's death and froze the firm's accounts.

g.  Mrs. Lay had access to cash in an undetermined amount but had at her disposal at least $720,000 from the proceeds of life insurance policies on her deceased husband's life.

h.  Mr. McDonald arranged to have Mrs. Lay meet with PNC Bank representatives to discuss the lines of credit.

i.  Mrs. Lay met with various representatives of PNC Bank to discuss the loans. PNC Bank refused to unfreeze the accounts or allow the lines of credit to continue and insisted on repayment.

j.  Mrs. Lay used part of the proceeds from the life insurance policies to pay off the lines of credit.

k.  During the period of time prior to paying off the PNC Bank loans, Mrs. Lay was represented by Attorney Ronald Susmarski, who made

arrangements to make the money from the insurance policies available to pay off the loans.

While Mrs. Lay maintains in the Complaint and other litigation papers that Mr. McDonald advised her to pay off the loans with personal funds, nowhere in the record, including her deposition, does she provide testimonial support for the details of that claim. Nonetheless, assuming that Mr. McDonald did provide such advice, the balance of her statement as set forth above, is materially false as follows:

a.  The loans were unsecured. To the contrary, the loans were secured by a mortgage of the Lay law building.

b.  She was not personally liable. Indeed, Mrs. Lay was completely liable for the balance of the loans as she had agreed to be a guarantor of the payment of the loans.

c.  She had no obligation to use personal funds. As guarantor she was obligated to pay off the loans ostensibly with whatever funds were legally available to her.

In the end, this claim comes down to an assertion that Mr. McDonald advised Mrs. Lay to pay off loans for which she was personally responsible and which were secured by a mortgage on one of the key assets of the Estate. Mrs. Lay was the sole heir of the Estate. There is no evidence in the record to support the notion that such advice was inconsistent with the applicable standard of care for a lawyer in such circumstances. As above, the Plaintiffs have not come forward with a report from a legal expert which would indicate the nature of the alleged professional malpractice. *Storm v. Golden*, 371 Pa. Super. 368, 538 A.2d 61 (1988).

Summary judgment will be granted with regard to this claim.

6

4. **Breach of contract action regarding fee differential theory for the "Allen" case.**

The facts with regard to this claim as contained in the summary judgment record are as follows:

a. Mr. Lay represented Michelle Allen with regard to a potential legal action involving the death of her husband.

b. Upon Mr. Lay's death, no complaint had been drafted or filed, although the case had been favorably reviewed by a physician with whom Mr. Lay was acquainted.

c. Mr. Lay had discussions with his wife, Darlene, and others indicating that, in the event of his death, the case should be referred to Attorney Patrick Loughren.

d. Attorney Thomas Talarico, who was associated with Mr. Lay but not employed by him, worked on the case and had an agreement with Mr. Lay in which they would equally share any fee that was earned in the case's ultimate resolution.

e. Attorney Talarico rented the second floor of the Lay law building and utilized the law library on the second floor for which he shared the expense and which was accessible to all the attorneys in the building.

f. Mr. Lay passed away on August 27, 2010, and as of that time Attorney Talarico was actively working on the case and had complete access to the file, a part of which was retained in his own office and a part of which was spread out in the law library.

7

g. Shortly after Mr. Lay's death, Attorney Talarico was working on a draft of the complaint which had to be filed pursuant to a certain action that had been taken by a defendant.

h. At a meeting with Mrs. Lay, Mr. McDonald and others, including Attorney Loughren, there was discussion of who would take responsibility for continuing to represent Mrs. Allen.

i. At that meeting both Attorney Talarico and Attorney Loughren indicated that they wished to take on the case and represent Mrs. Allen.

j. Mr. McDonald requested that those two attorneys try to work out an agreement on the manner in which the case would be handled. Thereafter, however, Attorney Talarico reported that they failed to reach an agreement.

k. Mrs. Lay attended the meeting with the two attorneys and Mr. McDonald and she voiced no objection to Mr. McDonald's suggestion that the two attorneys work out an agreement as to the representation issue.

l. Mr. McDonald did not refer the case to either attorney.

m. On September 24, 2010, Mrs. Allen signed a contingency agreement with Attorney Talarico.

n. Mr. McDonald did nothing to facilitate Attorney Talarico's representation of Mrs. Allen.

o. Attorney Talarico agreed to pay the Estate a one-third (1/3) referral fee, however, Attorney Loughren had initially offered to take over

8

representation of the plaintiff and in return would provide a fifty (50) percent referral fee.

p.   The file in the Allen case was not given to Attorney Talarico by Mr. McDonald as he already had it and was working on it and preparing a complaint.

q.   Later, at Attorney Robert Garber's request, Attorney Talarico offered to have Attorney Loughren take over representation of Mrs. Allen, if in return Attorney Loughren provided him with an acceptable referral fee. Attorney Loughren declined the offer.

r.   Although the Allen case was believed by the Estate and apparently the attorneys that reviewed it to be of considerable value, neither the merits nor value of the case are addressed in the record.

s.   Mrs. Lay, on behalf of the Estate, agreed to accept Attorney Talarico's referral fee arrangement.

The theory of this cause of action, while originally including professional negligence, now centers entirely on what was described by the court early in the proceedings as a "contract implied in law".[5] In responding to preliminary objections filed by the Defendants, the court indicated that the Plaintiffs had pled sufficient facts in their Complaint to support an action for breach of a contract implied in law. A contract implied in law has generally been defined as a contract that sounds in "unjust enrichment" and arises in circumstances where there is actually no meeting of the minds but where justice dictates finding that there was a relationship between parties such that equity required a finding that an enforceable agreement existed. A close

---

[5] The Honorable Fred Anthony addressed preliminary objections filed with regard to the original Complaint. See, Memorandum, July 11, 2013.

9

reading of the court's opinion leads to the conclusion that, rather than a contract implied in law, the court actually found that the Plaintiffs had sufficiently pled a contract implied in fact.

The elements of a contract implied in fact are the same as the elements of any other contractual relationship and it requires that a plaintiff demonstrates the "outward and objective manifestation of assent". *Rambo v. Green*, 906 A.2d 1232 (Pa. Super. 2006). It is necessary for a claimant to prove the intention of the parties even though those intentions were not directly expressed. *Bricklayers of W. Pa. Combined Funds v. Scott's Dev. Co.*, 625 Pa. 26 (2014).

Here, there was no written contract between the Estate and Mr. McDonald, as its attorney, contained in the record of this summary judgment proceeding. The Complaint alleges that Mrs. Lay, who was the co-executor, wanted the case referred to Attorney Loughren and directed Mr. McDonald to do so and indicated that he should introduce Mrs. Allen to Attorney Loughren and that he should not refer the case to Attorney Talarico. Because of Mr. McDonald's dual responsibilities as both co-executor and attorney for the Estate, it is not evident in which capacity Mrs. Lay was expecting him to act. Generally co-executors each have the power to bind an estate to an agreement and may act unilaterally. *In Re: Estate of Maskowitz*, 115 A.2d 372 (2015). Outside of what has been pled in the Complaint, the Plaintiffs have not included in the factual record by way of testimony or affidavits or any other format any factual recitations indicating the facts that would lead to the implication that Mr. McDonald assented to a request to refer the Allen case to Attorney Loughren or that there were terms of his engagement as an attorney that required him to do so. Moreover, assuming there was a contractual arrangement with Mr. McDonald to generally provide legal services, and in particular, to make

10

the referral arrangements regarding the Allen case, the question remains as to whether the Estate suffered any damages as a result of a breach.

Apart from the comments and opinion of Mrs. Lay, there is nothing in the record to indicate that the Allen case involved a claim that was likely to succeed. There is no expert report describing what occurred to Mr. Allen or describing the negligence that led to his death. There is also no information in the record about the value of the case other than it was thought by some to be a high damage case. The claim of the Plaintiffs in this case is that Attorney Loughren would provide a fifty (50) percent referral fee and Attorney Talarico a one-third (1/3) referral fee. Whether this is a meaningful distinction in the circumstances in this case would hinge on the value of damages in the case and of course the probability of successful prosecution. Since there is no evidence in the record either calculating damages or concerning the likelihood of success, a determination, even an estimate of damages in this case, is not possible. Without any facts about the case's potential merit, there is no way to predict the nature of an ultimate result and therefore no way of calculating the amount of damages based on the fee differential theory.

In addition, there is little information in the record about the comparative skill and experience of the respective attorneys. Obviously, attorney competence is a significant factor in ascertaining the likelihood of a favorable result. There is information in the record indicating that Attorney Talarico was associated with Mr. Lay, generally had thirty (30) years' experience handling personal injury cases, including medical malpractice cases, and assisted him on this and other cases. The Plaintiffs have not presented any evidence to the contrary. Moreover, there is no information in the record with regard to Attorney Loughren's actual experience and skill that would provide for a means of determining the likelihood that he would obtain a result that would have made the fifty (50) percent referral fee a meaningful advantage to the Estate. On the record

11

before this Court, a jury could not, without speculation, ascertain damages to the Estate as a result of the differential referral arrangements.

Finally, the record also reveals that after Mrs. Allen retained new counsel, Attorney Talarico and Mrs. Lay, along with the Estate's attorney, Robert Garber, accepted his offer of providing a one-third (1/3) referral fee to the Estate. It is obvious in those circumstances that there was no desire to refer the case to anyone else and no damages to the Estate.

Summary judgment with regard to the differential fee agreement will be granted. An appropriate order follows.

BY THE COURT:

SENIOR JUDGE

John A. Bozza, Senior Judge

Dated: November 17, 2015

cc: Joseph S.D. Christof, II, Esquire
Michael P. Flynn, Esquire
c/o   Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
(Counsel for Defendants, James D. McDonald, Jr. and The McDonald Group, LLP)

Jack W. Cline, Esquire
James A. Stranahan, Esquire
c/o   101 South Pitt Street
P. O. Box 206
Mercer, PA 16137
(Counsel for Plaintiffs, Estate of James P. Lay, III and Mrs. Darlene M. Lay)

12

THE ESTATE OF JAMES P. LAY, III : IN THE COURT OF COMMON PLEAS
AND MRS. DARLENE M. LAY, : OF ERIE COUNTY, PENNSYLVANIA
      Plaintiff, :
       : CIVIL ACTION - LAW
     v. :
       :
JAMES D. MCDONALD, JR., AND : No. 12889-2012
THE MCDONALD GROUP, LLP, :
      Defendants. :

## OPINION

Bozza, J., April, _16_, 2014.

This matter comes before the Court on Defendant's Preliminary Objections to the Second Amended Complaint. Following a review of the record and oral argument, Defendant's Preliminary Objections are OVERRULED IN PART AND SUSTAINED IN PART.

### I. Factual and Procedural History

This matter arises out of the death of James P. Lay, III ("Mr. Lay") on August 27, 2010. Plaintiffs allege that Defendant, James D. McDonald, Jr., ("Mr. McDonald") developed an attorney-client relationship with Plaintiff Darlene M. Lay ("Mrs. Lay") and acted as co-executor and attorney for Mr. Lay's estate until his removal in October 2010. Plaintiff's initial complaint was filed on January 23, 2013 and following the disposition of various procedural matters, Preliminary Objections were filed on May 3, 2013. These Preliminary Objections involved both requests for the dismissal of certain counts set forth in the Complaint and requests for the filing of a more specific pleading. The case was assigned to the Honorable Fred P. Anthony, Senior Judge, for disposition.

Plaintiffs' claims included allegations of fraud, breach of contract, professional negligence and breach of fiduciary duty. Specifically, Plaintiff's alleged that Mr. McDonald failed to maximize the value of the assets of Mr. Lay and otherwise wasted estate and personal

1

*APPENDIX "D"*

funds. In particular, Plaintiffs have alleged that Mr. McDonald failed to exercise his responsibilities with regard to his oversight of the case of *Michelle D. Allen v. Hamot Medical Center*, Erie County Docket No. 12904-2010, by failing to refer the case to Patrick J. Loughren, Esq., the attorney that Mr. Lay had designated. Instead, Plaintiffs' claim that Mr. McDonald allowed the file to end up in the hands of an allegedly less competent attorney, Thomas S. Talarico, Esq., who agreed to pay a lesser referral fee to the estate.

On July 11, 2013, the Court entered an Order with an accompanying Memorandum Opinion, providing that the Preliminary Objection to Plaintiff's professional negligence claim for failure to file a proper Certificate of Merit ("COM") was sustained "without prejudice." The Court explained in its Memorandum that Plaintiff's expert, whose letter to counsel actually served as the COM, failed to comment with regard to the allegations of negligence concerning Mr. McDonald's advice to Mrs. Lay regarding estate debts and other matters. In addition, with the exception of the claim punitive damages, the Court overruled all of the Defendant's motions to dismiss but granted motions for a more specific pleading with regard to the counts of fraud, professional negligence, and breach of contract for reasons set forth in the Memorandum. The Court further directed that Plaintiffs had thirty (30) days to file an amended complaint.

On August 14, 2013, Plaintiffs filed their first Amended Complaint, and on September 3, 2013, Defendants filed Preliminary Objections thereto. On September 20, 2014, Plaintiffs filed Preliminary Objections to Defendants' Preliminary Objections. Oral argument was held thereon, and on November 1, 2013, Judge Anthony overruled Plaintiff's Preliminary Objections and gave the Plaintiffs twenty (20) days to file a "responsive pleading" to Defendant's Preliminary Objections. On November 21, 2013, Plaintiffs filed a Second Amended Complaint. On December 9, 2013, Defendants filed Preliminary Objections thereto. This matter was

subsequently reassigned and oral argument was again held on March 6, 2014 before the Honorable John A. Bozza, Senior Judge.

## II. Law and Analysis

Pa. R. Civ. P. 1028 provides that "[p]reliminary objections may be filed by any party to any pleading" and only on limited grounds. Defendants have now raised preliminary objections for failure of a pleading to conform to law or rule of court under Rule 1028(a)(2), for inclusion of a scandalous or impertinent matter under Rule 1028(a)(2), for insufficient specificity under Rule 1028(a)(3), and for legal insufficiency of a pleading, or a demurrer, under Rule 1028(a)(4), similar to, but not the same as, those filed to the initial complaint.

Of considerable significance in this matter is the application of the coordinate jurisdiction rule. Upon transfer of a case to a different judge a court is bound to follow the resolution of a legal question previously decided by another judge with the same jurisdictional authority. *Hunter v. City of Philadelphia*, 80 A.3d 533, 536 (Pa. Commw. 2013) (citation omitted). The notion is that absent some unusual circumstance judges of the same jurisdiction should not be overruling each other. *Id.* There are exceptions to the rule, however, that include instances where the nature of the matter before the court arises in a different procedural context, such as summary judgment versus preliminary objections, or where adhering to prior a ruling that was clearly in error would lead to a manifest injustice. *Zanes v. Friends Hospital*, 836 A.2d 25, 29 (Pa. 2003) (citation omitted). Neither of those circumstances applies here.

There is of course often a need to assure that the legal questions involved are indeed the same and that the factual posture of the case has remained the same. *Hunter*, 80 A.3d at 536. The rationale underlying the rule to promote finality assumes that the issues and relevant facts are the same. Here, the record demonstrates a complex procedural history with a number of legal

3

issues raised by Defendants presented in three sets of preliminary objections. Plaintiffs suggest that the resolution of the first set of preliminary objections may, in part, prevent further Court action on the current set of preliminary objections to the Plaintiff's Second Amended Complaint.

This Court first notes that although Judge Anthony overruled a number of preliminary objections involving claims of fraud, professional negligence and breach of contract, in each instance, he granted a Motion for a More Specific Pleading. In its Memorandum, the Court made it clear that it viewed the Plaintiffs' Complaint to be wanting with regard to the specificity of the facts alleged in support of those claims, providing examples of where the Complaint was deficient. In the context of the Preliminary Objections currently before the Court, Defendants have laid out continuing concerns with regard to the sufficiency of factual averments in the latest amended complaint in light of Judge Anthony's conclusion that more specificity was required. Therefore, at a minimum, this Court is obligated to ascertain whether the Plaintiffs have sufficiently complied with Judge Anthony's directive. Such an inquiry does not run afoul of the coordinate jurisdiction rule. In other instances, as more fully addressed below, the issue presented is different in character and the rule is not applicable.

a. **Defendants' Motion to Strike Second Amended Complaint in its Entirety for Failure to Conform to Law or Rule of Court pursuant to Rule 1028(a)(2)**

Defendants argue Plaintiffs filed the Second Amended Complaint in direct violation of this Court's October 31, 2013 Order to file a responsive pleading within twenty (20) days. Defendants explain that the October 31, 2013 Order unambiguously directed Plaintiffs to file a responsive pleading to Defendants' Preliminary Objections to Plaintiff's Amended Complaint. Defendants note that Plaintiffs were also well outside of the twenty (20) day period from Defendants' filing of Preliminary Objections as a matter of right under Pa. R. Civ. P. 1028(c)(1) and that Plaintiffs did not seek leave of Court or consent of Defendants before filing the Second

4

Amended Complaint in contravention of Pa. R. Civ. P. 1033. In response, Plaintiffs argue that the Second Amended Complaint is a responsive pleading in compliance with this Court's October 31, 2013 Order.

Pennsylvania Rule of Civil Procedure 1028(a) provides that any party may file a preliminary objection to any "any pleading." Pa. R. Civ. P. 1017 designates a preliminary objection as a pleading. This Court is unconvinced by Plaintiff's position that its Second Amended Complaint is a responsive pleading to Defendants' Preliminary Objections in compliance with this Court's October 31, 2013 Order. However, the Rules of Civil Procedure explicitly provide that if a preliminary objection is overruled, the objecting party has twenty days to plead over. Pa. R. Civ. P. 1028(d). Therefore, Plaintiffs were authorized by rule to file an Amended Complaint in response to the Court's Order overruling their Preliminary Objections. In any case, it should be noted that Defendants' Preliminary Objections to the Amended Complaint are very similar in nature to Defendants' Preliminary Objections to the Second Amended Complaint. The issues, both substantively and procedurally, remain essentially the same and it would serve no legal or practical purpose to strike the Second Amended Complaint. Accordingly, Defendants' Preliminary Objections to Amended Complaint are OVERRULED AS MOOT and Defendants' Motion to Strike Second Amended Complaint in its Entirety is DENIED.

**b. Defendants' Motion to Strike Averments of Second Amended Complaint Based on Scandalous and Impertinent Material pursuant to Rule 1028(a)(2)**

Defendants argue that the averments in paragraphs 24-30 of the Second Amended Complaint should be stricken as they involve scandalous and impertinent matters relating to Mr. Lay's final days, funeral and wake. It does not appear that this issue was previously raised as the factual averments at issue were added to the Second Amended Complaint. Our Commonwealth

Court has held that allegations are scandalous and impertinent when they are immaterial and inappropriate to the proof of the cause of action. *Common Cause/Pennsylvania v. Commonwealth*, 710 A.2d 108, 115 (Pa. Commw. 1998), aff'd, 757 A.2d 367 (Pa. 2000) (citation omitted). Defendants claim that paragraphs 24-30 contain allegations wholly immaterial and inappropriate to any of the issues in this action and should be stricken as having no bearing on the case. Defendants further argue these allegations serve only to cast a negative and prejudicial light on Defendants. Plaintiffs argue that the allegations are proper in that they represent an attempt to plead allegations of fraud with specificity.

It is important to recognize that Pennsylvania does not favor and certainly does not require the pleading of evidence in a civil complaint. Pa. R. Civ. P. 1019(a). While fact pleading does necessarily require a more detailed recitation of the factual underpinnings of a cause of action, albeit in an concise and summary fashion, it does not require that one plead circumstances relating to an event or in support of a necessary element that would otherwise be admissible in a hearing or trial as mere proof of a relevant fact. For example, motive is seldom an element of either a civil or criminal cause of action, but, nonetheless, is widely admissible in a proceeding before a fact finder. In a similar manner, evidence of character, particularly as bearing on credulity, seldom has a place in a civil pleading but may, in limited circumstances, be admissible at the time of trial. It is conceivable that some of what the Court finds objectionable in Plaintiff's complaint may, under the proper circumstances, be admissible as evidence at the time of trial.

After a review of these paragraphs, this Court finds that paragraphs 24, 25, 27, 28, and 30 contain, in large part, scandalous and impertinent matters. None of the allegations in paragraphs 24, 25, 27, 28, and 30 are material to of the elements of the fraud claim and have no impact on

6

the resolution of this case. Rather, these paragraphs seek to cast a derogatory light on Defendants and have no place in a pleading. Paragraphs 26, 29 and 30 are proper in that they are allegations that reasonably related to Plaintiffs' claims. Accordingly, Defendants' Motion to Strike Paragraphs 24, 25, 27, and 28 is GRANTED. The Motion to Strike Paragraphs 26, 29 and 30 is DENIED.

**c. Defendants' Demurrer/Motion to Strike and Lack of Specificity Regarding Count IV, Sounding in Fraud pursuant to Rule 1028(a)(3) – (a)(4)**

Defendants note that this Court previously sustained Defendants' Preliminary Objections to Plaintiff's original Complaint on failure to plead fraud with the requisite specificity. (Order, July 11, 2013, at 9-10.) More accurately, the Court overruled the preliminary objection seeking dismissal of the fraud count, but sustained the preliminary objection seeking a more specific pleading. In its prior ruling, the Court observed:

> Here the Plaintiffs' complaint reveals that the Plaintiff's have pled the "key" words with respect each element of fraud. However, closer review of the complaint indicates they have pled little, if any, facts pertaining to each element of fraud. The Estate's count for fraud is littered with vague assertions concerning Mr. McDonald's allegedly improper instructions to Mrs. Lay regarding her personal obligations pertaining to the maintenance and/or continued operation of the law firm. Mr. McDonald is entitled to know specifically the details of the advice and counsel he allegedly rendered to Mrs. Lay constituting fraud so Defendants may appropriately respond and prepare their defense.

(Memorandum, July 11, 2013 at 10.) The issue now before the Court is whether the Plaintiffs have included in their Second Amended Complaint additional facts sufficient to meet the Court's concern and otherwise meet the pleading requirements for a claim of fraud.

Pennsylvania is a fact pleading jurisdiction that requires more than simply general averments of wrongdoing in order to plead a cause of action. Individual facts must be alleged that are sufficient to support an established cause of action. Our courts have long recognized the

7

importance of a heightened pleading standard in cases where a plaintiff asserts that one acted in a fraudulent manner. *In re Estate of Schofield*, 477 A.2d 473, 477 (Pa. 1984). Pursuant to Pa. R. Civ. P. 1019(b), "[a]verments of fraud or mistake shall be averred with particularity." Specifically the Supreme Court has noted that:

> In satisfaction of the particularity requirement we have required that two conditions must always be met: the pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense, and they must be sufficient to convince the court that the averments are not merely subterfuge.

*Id.* (citing *Bata v. Central-Penn National Bank of Philadelphia*, 224 A.2d 174 (Pa. 1966)) (citations omitted). This rationale has been reinforced by more recent cases before the Superior Court. *See Presbyterian Med. Ctr. v. Budd*, 832 A.2d 1066, 1072-73 (Pa. Super. 2003). As is apparent from a long line of Pennsylvania cases, an assertion that one acted dishonestly, as is the case here, is not a matter to be taken lightly and it is imperative that the court view such allegations closely to assure compliance with the letter and spirit of these heightened pleading requirements.

Defendants argue that both the First Amended Complaint and Second Amended Complaint are identical in all material respects to Count IV of the original Complaint and Plaintiffs have failed to cure any defects. Plaintiffs argue that the allegations of fraud contain all of the necessary elements to support a cause of action for fraud. The elements of fraud, or intentional misrepresentation, are (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Id.* at 1072.

8

Assessing the sufficiency of Plaintiffs' Second Amended Complaint is a challenging task, as the averments set forth in Count IV are many and varied, and contain a number of paragraphs which contain anything but precise assertions and include conclusions of law extraneous to pleading requirements. In general, however, the Court agrees with Defendant's position that Plaintiffs have failed to meet the essential requirement of pleading fraud with specific particularity. Contrary to the Court's conclusion as stated in its Memorandum and Order of July 11, 2013, Plaintiffs have failed to plead their fraud count more specifically. In that regard, the Court addresses the sufficiency of the relevant paragraphs as follows:

55. This paragraph makes a broad assertion of fraud with regard to a billing issue. While it asserts that bills were fraudulent, it fails to indicate which bills are at issue and does not identify the services that were fraudulently provided.

56. Here, Plaintiff claims that the bills were "bogus" without an indication of which bills are involved. It also does not include any factual averments as to the content of the misrepresentations or when and how they were made or communicated.

57. Here, there is a general averment that statements of a fraudulent nature were made but no details concerning where, when, and how they were communicated are provided. It is one thing to not be able to pinpoint with absolute certainty the specifics of each statement, and another to provide no information about the statements at all. In the latter situation, as here, one is not pleading fraud with sufficient specificity.

58. In this paragraph, Plaintiffs allege that information was concealed without an indication of what was concealed or the circumstances of how and when it was accomplished. Moreover, the notion that the actions of the defendants were "duplicitous" is without any factual foundation.

59. Here, Plaintiffs allege that Defendants established Plaintiffs as clients without their knowledge, but fail to indicate how this was accomplished.

60. There is no indication of which bills and taxes Plaintiffs are complaining about. Although Plaintiffs plead "as more fully set forth herein," it cannot be discerned with any certainty by reading the balance of the Complaint what bills and taxes are specifically referred to, in part, because Plaintiffs assert that there are "many" of them.

61. There is no delineation of the "services" and "routine and sundry" matters to which Plaintiffs refer. There is also no indication of which bills constituted "double billing."

62. This paragraph alleges a violation of a fiduciary duty without indicating how this relates to the fraud allegation. Moreover, the claims against Mr. McDonald relating to his position of executor are no longer apart of the lawsuit. (Oral Argument Transcript, March 6, 2014 at 15:23-16:19; 23:25-24:25; 30:5-31:7.) Also, there is no inclusion of facts indicating what "unnecessary" or "duplicitous" work was performed.

63. This paragraph includes only the broadest assertions of fraud without any facts indicating the circumstances of the alleged misrepresentation. There is a

general assertion that Defendants benefitted from their fraudulent conduct without any indication of what the misrepresentation may have been.

64. This paragraph does not relate to fraud at all, but rather to some kind of other kind of tortious behavior. Assuming that Plaintiffs are attempting to plead fraud, the assertion that Defendants "literally forced" Plaintiffs to hire Joseph Steele is without any factual support in the complaint. Nor do Plaintiffs provide any factual allegations concerning Defendant's allegedly "devious" purposes.

65. This paragraph is wholly unrelated to the claim of fraud. Moreover, it makes broad assertions of "fraudulent actions and schemes" without identifying any details concerning them. Plaintiffs make reference to "statements" without describing them in any way or indicating when they occurred.

67. In general, this a confusing averment with multiple assertions contained within an eleven line sentence. There is reference to misrepresentations and other occurrences without providing any details concerning their content or when and where they may have occurred.

70. This paragraph has nothing to do with the elements of fraud.

75. This paragraph has nothing to do with the fraud allegation.

76. This has nothing to do with the allegation of fraud.

Consistent with the analysis and conclusions described above, the Preliminary Objection of the Defendants to Count IV in the nature of a Demurrer/Motion to Strike is SUSTAINED.

**d. Defendants' Motion to Strike for Insufficient Specificity of Pleading Pursuant to *Connor*, Related Pennsylvania Precedent, and Rule 1028(a)(3)**

This Preliminary Objection is directly related to the Court's previous admonition to the Plaintiffs to plead their various claims more specifically. Pa. R. C. P. No. 1028(a)(3) allows a party to file preliminary objections on the basis of insufficient specificity. The case of *Connor v. Allegheny General Hospital* is often raised by defendants in preliminary objections. In this medical malpractice action, our Supreme Court explained in a footnote that if the defendant did not understand the indefinite allegation that it "otherwise fail[ed] to use due care and caution under the circumstances," the defendant could have filed a preliminary objection in the nature of a request for a more specific pleading or moved to strike that portion of the complaint. *Connor v. Allegheny Hospital*, 461 A.2d 600, 603 n.3 (Pa. 1983). However, the related holding dealt with the fact that it was error to prevent Plaintiffs from amending the allegations in the complaint. The Court held:

> In this case, [plaintiffs'] proposed amendment does, in fact, amplify one of the allegations of the original complaint. In their original complaint, [plaintiffs] did not merely allege that the barium enema had been negligently performed. Rather, [plaintiffs] also alleged that appellee, acting individuals and through its employees, was negligent "[i]n otherwise failing to use due care and caution under the circumstances." [Plaintiffs'] proposed amendment simply specifies the other was in which [defendant] was negligent in this case. Since [plaintiffs'] proposed amendment does not change the original cause of action, but rather merely amplifies it, the amendment would not result in any prejudice to [defendant]. In view of the policy that the right to amend should be liberally granted, and in view of the fact that the amendment in this case would not have worked a prejudice against [defendant], it was an abuse of discretion for the trial court to refuse the proposed amendment, and it was error for the Superior Court to uphold the trial court's action.

*Id.* at 602-03. Consequently, the well-known, often misconstrued, *Connor* footnote regarding the option of a defendant to file preliminary objections seeking a more specific pleading is nothing

more than dicta that calls attention to the importance of the requirement of fact pleading, the admonition against indefinite and open-ended allegations and the pitfalls of failing to object to such averments in a timely manner. While the holding in *Connor per se* does not serve as a basis for relief here, it firmly establishes that a party may amend a Complaint in order to amplify an allegation previously set forth where that allegation is broadly stated and not objected to. Here, Defendants are indeed objecting.

In this Preliminary Objection, Defendants argue that Plaintiffs have made a number of vague, open-ended and conclusory allegations, and as a result, they have not been put on notice of the specific claims against which they must defend. Specifically, Defendants argue Paragraphs 44(d), (f), (g), and (h), 45(c), 53(d), 60, 67, 68 and 72 should be stricken and Paragraphs 32, 35-37, 40, 42, 49(c), 53(c) and Count II be dismissed with prejudice. Plaintiffs argue in opposition that they have pled the above allegations with sufficient specificity.

With regard to the specific objections raised by the defendants the Court finds as follows:

1. Paragraph 44(d). The motion to strike is GRANTED.

2. Paragraph 44(f). The motion to strike is DENIED but proof at the time of trial limited the factual allegations as stated in the paragraph.

3. Paragraph 44(g). The motion to strike is DENIED but proof at the time of trial limited the factual allegations as stated in the paragraph.

4. Paragraph 44(h). The motion to strike is DENIED but proof at the time of trial limited the factual allegations as stated in the paragraph.

5. Paragraph 45(c). The motion to strike is DENIED but proof at the time of trial limited the factual allegations as stated in the paragraph.

6. Paragraph 53(d). The motion to strike is DENIED but proof at the time of trial limited to the facts set forth in the complaint.

7. Since Count IV is stricken for the reasons set forth above the motion to strike, Paragraph 60 is DENIED AS MOOT.

8. Since Count IV is stricken for the reasons set forth above the motion to strike, Paragraph 67 is DENIED AS MOOT..

9. Since Count IV is stricken for the reasons set forth above the motion to strike, Paragraph 68 is DENIED AS MOOT

10. Since Count IV is stricken for the reasons set forth above the motion to strike, Paragraph 72 is DENIED AS MOOT.

11. Paragraphs 32, 35-37, 40, 42, 49(c) and 53(c) and Count II. The motion to dismiss with prejudice is DENIED.

e. **Defendants' Motion to Strike for Failure to Conform to Rule or Law for Lack of a Sufficient or Proper Certificate of Merit pursuant to Rule 1028(a)(2)**

Pursuant to Pa. R. Civ. P. 1042.3(a), "any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for plaintiff . . . shall file with the complaint or within sixty days after the filing of the complaint, a certificate or merit signed by the attorney."

> The [certificate of merit] is a summary written certification by the plaintiff or counsel, which represents to the defendant profession and the Court that a license professional in the same field as the defendant has supplied a written statement to the effect that there exists a reasonable probability that the defendant was professionally negligent. The Rule directs that the [certificate of merit] state either:
>
> (1) that the professional negligence claim is based on a direct theory or liability with reasonable factual and expert support, *i.e.*, that: an appropriate licensed professional has supplied a

14

written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) that the professional negligence claim is solely based on an otherwise supported vicarious theory of liability, i.e. that the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard.

*Stroud v. Abington Mem. Hosp.*, 546 F. Supp. 2d 238, 248 (E.D. Pa. 2008) (citations omitted).

The purpose of requiring a Certificate of Merit in such cases is to prevent "the filing of malpractice claims of questionable merit, and . . . to avoid the burdens that such claims impose upon litigation and the courts." *Pollock v. Feinstein*, 917 A.2d 875, 877 (Pa. Super. 2007) (citation omitted).

Here, Plaintiffs filed their first Certificate of Merit on March 6, 2013. This Court ruled that this original Certificate of Merit was defective in its July 11, 2013 Memorandum Opinion. This Court explained:

> [T]he Court does find that the Plaintiffs certificate of merit fails to comply with Pa.R.C.P. 1042.3(a)(1). Here, Plaintiffs only obtained an expert opinion with respect to Mr. McDonald's conduct concerning the referral of the Allen case. Absent from Plaintiff's certificate of merit is any opinion concerning Mr. McDonald's conduct related to the advice he rendered to Mrs. Lay pertaining to her personal obligations to continue operating the law firm and satisfy its debts. Based upon the totality of Plaintiff's allegations of professional negligence, the Court finds that Plaintiff's certificate of merit fails to comply with the Pennsylvania Rules of Civil Procedure because it fails to contain any statement concerning Mr. McDonald's conduct with respect to the advice he rendered to Mrs. Lay.

Following this Court's July 11, 2013 Order, Plaintiffs filed an Amended or Supplemental Certificate of Merit on August 21, 2013.

15

Defendants' argument is two-fold: (1) that the Pennsylvania Rules of Civil Procedure and applicable case law do not authorize Plaintiffs to file an Amended or Supplemental Certificate of Merit, and (2) that the Amended Certificate of Merit remains defective because Plaintiffs have failed to identify an actual injury or any resultant damages required to sustain a legal malpractice action. Plaintiffs argue that preliminary objections are not the proper vehicle to challenge a certificate of merit, and that a Pa. R. Civ. P. 1042.8 "Motion to Strike" is the proper method. Plaintiffs assert that because the time to file a Motion to Strike has expired, Defendants are attempting to improperly use preliminary objections as a "backdoor" challenge to the certificate of merit. As to the sufficiency of the content of the certificate of merit, Plaintiffs argue that contingent fees are speculative by nature, and therefore, any expert would have to give a speculative certification as to the merits of the case.

There is no authority that permits the automatic right to file an amended certificate of merit. Indeed there is authority indicating that such a right does not exist. *Stroud v. Abington Memorial Hosp.*, 546 F. Supp. 2d 238, 249-50 (E.D. Pa. 2008). On the other hand, the Superior Court has noted that equitable considerations must be considered by the trial court when determining the sufficiency of a certificate merit. *Ditch v. Waynesboro Hosp.*, 917 A.2d 317 (Pa. Super. 2007), aff'd 17 A.3d 310 (Pa. 2011). Here the Court, while finding that Plaintiffs' Certificate of Merit was deficient with regard to the professional negligence claims set forth in the Complaint, sustained the Preliminary Objection, "without PREJUDICE," thus impliedly allowing the Plaintiffs the opportunity to file an amended certificate. As a result, in these circumstances, the filling of the amended Certificate of Merit was acceptable.[1] Accordingly, Defendants' Motion to Strike is DENIED.

---

[1] It is noteworthy that rather than supplying only the Attorney's certification per Pa. R. Civ. P. 1042.3, Plaintiff provided the actual letter from the reviewing expert.

f. Defendants' Demurrer/Motion to Strike Regarding Counsel Comparison Claims to the *Allen* case pursuant to Rule 1028(a)(4) and Defendants' Demurrer/Motion to Strike Regarding Referral Fee Differential Claims as to the *Allen* case pursuant to Rule 1028(a)(4)

In his Memorandum Opinion of July 11, 2013, Judge Anthony indicated that he found that Plaintiffs had pled sufficient facts to minimally state a claim on the basis of a contract "implied in law."[2] (Memorandum, July 11, 2013 at 8.) The Court noted that the Complaint included facts sufficient to establish that Defendants' actions in accepting a referral arrangement with Mr. Talarico that included a lesser referral fee was adequate to establish the requisite "harm" in a legal malpractice case. (*Id.*) In its Memorandum, the Court did not directly address the viability of Plaintiffs' "counsel comparison" claim (i.e. that Mr. Loughren is a better lawyer than Mr. Talarico) in the context of negligence or contract, although it noted that the Complaint was devoid of facts supporting such an allegation. (*Id.* at 10.) In general, the Court concluded that the Complaint lacked sufficient specificity with regard to both Professional Negligence and Breach of Contract claims and granted Defendants' Motion for a More Specific Pleading. (*Memorandum p.10-11, Order July 11, 2013*). Therefore, it is necessary for this Court to determine whether the Plaintiffs' Second Amended Complaint now includes additional facts sufficient to meet pleading requirements.

When faced with preliminary objections in the nature of a demurrer, a court must resolve the issues on the facts averred in the pleadings, and determine, "whether the complaint adequately states a claim for relief under any theory of law." *Mistick, Inc. v. Northwestern Nat'l Cas. Co.*, 806 A.2d 39, 42 (Pa. Super. 2002) (citations omitted). "To evaluate a demurrer under this standard, the court must accept as true all material averments of the complaint and may

---

[2] Considering that Plaintiffs have pled facts sufficient to allege an attorney-client relationship, it is not clear whether the Court was referring to a contract implied in fact. *Discover Bank v. Stucka*, 33 A.3d 82 (Pa. Super. 2011).

17

sustain the demurrer only if the law will not permit a recovery." *Id.* (citation omitted). "Where any doubt exists as to whether a demurrer should be sustained, it must be resolved in favor of overruling the demurrer." *Id.* (citation omitted).

Defendant argues that Pennsylvania Courts have ruled, in analogous cases, that contingent fee cases are speculative, and as such, no value can be placed on them. *See Lamparski v. Sikov, Lamparski & Woncheck,* 559 A.2d 544, 547 (Pa. Super. 1989); *In re Tony,* 724 F.2d 467, 468 (5th Cir. 1984). Defendants further argue that the Allen case "belongs" to Mrs. Allen, Plaintiffs have no ownership interest in the case, and Mrs. Allen is free to discharge her attorney at any time. *See Mager v. Bultena,* 797 A.2d 948, 958 (Pa. Super. 2002). Accordingly, Defendants' assert that Plaintiffs' position that the return on the referral fee of the Allen case is substantially compromised by the representation of Attorney Talarico, as opposed to Attorney Loughren is entirely speculative. In response, Plaintiffs argue that Defendants' argument is in opposition to their expert as provided in the Certificate of Merit. Plaintiffs state that they have alleged cognizable causes of action and that Defendants are free to deny these claims and proceed with discovery. The Court notes that both parties concede that the *Allen* case is ongoing, and as such, has not yet resulted in any actual injury to Plaintiffs.

To begin, it is essential that the focus of the Court's inquiry center on the facts as set forth in the Second Amended Complaint as they relate to the defendants' involvement in the *Allen* case and accepting as true all well pled facts relevant to the claim presented. In summary, the Court finds that pertinent factual averments are as follows:

1. Prior to the death of Mr. Lay, Mr. McDonald represented plaintiff Mrs. Darlene Lay and billed her for his services.

18

2. Following the death of James Lay until October 2010, James McDonald served as co-executor and attorney for the estate of James Lay and attorney for Plaintiffs.

3. After October 2010 until the end of 2010, Mr. McDonald continued to serve as attorney for the estate and for Mrs. Lay, the co-executrix of the estate.

4. Mr. McDonald was aware that Mr. Lay was an attorney whose practice was primarily in the area of litigation.

5. Mr. McDonald was aware that at the time of his death Mr. Lay had several open cases that needed to be referred to other competent counsel for resolution.

6. One of the most valuable assets in Mr. Lay's law practice was the case of *Michele D. Allen et al. v. Hamot medical Center*, a medical malpractice action that was initiated by Mr. Lay on a contingent fee basis.

7. Prior to his death, Mr. Lay made it clear to a number of people, including Mrs. Lay and Mr. McDonald, that the case should be referred to Patrick Loughren, Esq., and he wished that upon his death Mrs. Allen should be introduced to him.

8. Mr. Lay had confidence in Mr. Loughren's legal ability and Plaintiffs believe he is a highly successful malpractice attorney.

9. Mr. Loughren had agreed to take the case on a contingent fee basis and to pay a referral fee of 50% to Mr. Lay of his Estate.

10. During a meeting with Mr. Loughren with Mrs. Lay present, Mr. Lay went over his cases and indicated that Mr. Loughren was to take over his open cases.

11. At Mr. Lay's funeral Mrs. Lay told Mr. McDonald that it was her husband's desire that his cases be handled by Mr. Loughren.

12. At a meeting, following Mr. Lay's death, at which Mr. McDonald was present, Mr. Loughren noted that Mrs. Allen's case was potentially worth well into the seven figures.

13. Attorney Tom Talarico was present at the meeting indicated his interest in taking over the case.

14. It was made clear by someone to Mr. McDonald that the case should be referred to Mr. Loughren.

15. Mr. McDonald agreed.

16. Thereafter, the file disappeared from the Lay Law Office, and Mr. Talarico entered his appearance on behalf of Mrs. Allen on October 6, 2010.

17. Mr. McDonald permitted the *Allen* case file to leave the control of the Lay Law Offices without Mrs. Lay's knowledge.

18. He permitted the file to end to up in the office of Tom Talarico.

19. He did not introduce Mrs. Allen to Mr. Loughren.

20. Mr. Talarico is an inexperienced medical malpractice trial lawyer.

21. Mr. Talarico has agreed to pay a referral fee of thirty three and one third percent (33 1/3%) of his contingency fee in the Allen case.

With regard to the issue of Mr. McDonald's handling of the *Allen* case, it appears that Plaintiffs have asserted causes sounding in breach of contract, professional negligence and violation of a fiduciary duty. While an action in any of these categories does by implication call into question attorney competence, each has its own threshold elements that must be met by proper fact pleading. In that regard, it must be noted that all three claims seem to be based on essentially the same factual foundation. With regard to the fiduciary duty claim, it is not clear

whether the plaintiffs are pursuing the matter against Mr. McDonald in his capacity as co-executor or attorney or both. At the time of oral argument, counsel for the Plaintiffs seemed to be taking the position that at this juncture, his client would not be pursuing a claim against Mr. McDonald in his capacity as executor. (Oral Argument Transcript, March 6, 2014 at 31.)

In order to state a claim for attorney malpractice, a plaintiff must set forth factual allegations sufficient to make out a *prima facie* case with regard to each of the traditional elements of a negligence claim: duty, breach, causation and damages. *Atkinson v. Haug*, 622 A.2d 983, 986 (Pa. Super. 1993). More precisely, it is necessary for a plaintiff to plead the employment of an attorney, the failure of the attorney to exercise ordinary skill and knowledge, and the failure to do so was the proximate cause of harm. *Wachovia Bank v. Ferretti*, 935 A.2d 565, 570 (2007). In addition, however, it is also critical, whether a legal malpractice claim is presented as a contract action or a negligence action that one pleads and proves an actual loss. *Pashak v Barish*, 450 A.2d 67 (Pa. Super. 1982). An attorney is not liable for damages that are remote or speculative. *Id.* This does not mean that the amount of loss has to be pled with precision. The question is whether there will be any damage at all as a result of the claim being asserted and the mere possibility that one will sustain a loss in the future is not sufficient. *Id.* In short, in considering preliminary objections the Court must determine whether if proved the allegations in the complaint would allow the a plaintiff to recover damages. *Discover Bank v. Stucka*, 33 A.3d 82 (Pa. Super. 2011). Here, this Court finds that Plaintiffs' Second Amended Complaint does not meet the pleading requirements to state claims for professional negligence and breach of fiduciary duty as they relate to the *Allen* case. With regard to the contract "implied in law" claim, the Court having previously determined that Plaintiffs sufficiently pled harm on

21

the basis of the referral fee differential, the preliminary objection in the nature of a demurrer will be overruled.

While the Plaintiffs have delineated a factual scenario that asserts that Mr. McDonald did not refer the *Allen* case to Mr. Loughren, did not introduce Mrs. Allen to Mr. Loughren, and allowed the *Allen* file to be removed from the Lay law Offices, the claim of damage is entirely speculative. It is the essence of Plaintiffs' factual recitation that because Mr. Loughren is a better trial lawyer than Mr. Talarico, and that Mr. Talarico is returning a lesser percentage of any award or settlement to the Lay estate, they will suffer a loss. Nothing could be more speculative. Indeed, the notion that there will be any damage at all hinges not only on the generalized belief that the *Allen* case has legal merit, but also that Mr. Talarico's efforts will result in an outcome less favorable to the estate. Whether there is any loss to the estate at all depends entirely on guess-work by assuming that one attorney will do a better job than another.

This is not to say that the quality of legal representation is not a critical factor in the successful prosecution of a civil claim. But rather, it is to recognize that any attempt to predict the precise outcome of an action for personal injury is fraught with the inherent difficulties of predicting the behavior of a jury at some very uncertain date in the future. Moreover, in this case, it would be necessary to predict the outcome of two actions one prosecuted by Mr. Talarico and one pursued by Mr. Loughren, and to do so with the relative precision necessary to compare the results. Viewing the Plaintiff's Second Amended Complaint as a whole, it is apparent that even if the averments of fact were proven at trial, Plaintiffs would still be unable to recover damages because Plaintiffs cannot establish actual harm. *Id.*

In cases involving contingency fees, there are almost a limitless number of variables that will affect an ultimate outcome. It is the very risk of failure that justifies contingency fees in the

22

first place. Pennsylvania courts have noted the highly speculative nature of contingency fee cases in other contexts. *See Lamparski v. Sikov, Lamparski & Woncheck*, 559 A.2d 544, 547 (Pa. Super. 1989) (holding that contingency fee cases not reduced to settlement or judgment not to be considered in evaluating the value of a shareholders' interest in a law firm). Perhaps that is one of the reasons why Pennsylvania has never recognized a cause of action for negligent referral. *Bourke v. Kazaras*, 746 A.2d 642, 643-44 (Pa. Super. 2000) (holding that Pennsylvania courts have not adopted a cause of action for negligent referral). Here, based solely on the facts pled by the Plaintiffs there is no reason to conclude that the outcome of the *Allen* case will be any less uncertain.

Moreover, there is an additional concern with regard to the speculative nature of any actual future loss. There is no way to foresee that Mrs. Allen, the plaintiff in the lawsuit at issue, would have retained the services of Mr. Loughren as her attorney in any case. Indeed there is no factual assertion in that regard. Accepting as true the allegation that Mr. McDonald failed to introduce Mrs. Allen to Mr. Loughren, it is not possible to know or even guess whether her reaction to him would have been favorable or more accurately, more favorable than Mr. Talarico. Therefore, the plaintiff's position that a referral to Mr. Loughren would have ultimately benefitted the estate more than a referral to Mr. Talarico is nothing more than an averment of a hoped for result. In a similar vein, there are no factual allegations regarding the fee agreement that Mrs. Allen may have with Mr. Talarico. This of course would have significant consequences for the ultimate amount the estate may receive as a result of any fee sharing arrangement.

The Plaintiffs maintain that their expert report is sufficient to meet the pleading requirements for a professional negligence claim. A Certificate of Merit with an attached expert

23

letter is not a pleading. The list of authorized pleadings is provided in the Rules of Civil Procedure and an expert's report attached to a Certificate of Merit is not one of them. Nor for that matter is the Certificate of Merit itself. Pa. R. Civ. P. *1017*.

Accepting as true all of plaintiff's properly pled facts and viewing the plaintiff's complaint in a light most favorable to them, it must be concluded that Plaintiffs have failed to state claims against Defendants for professional negligence and breach of fiduciary duty related to the handling of the *Allen* case and the demurrer is SUSTAINED. As to the cause of action against Mr. McDonald for breach of contract "implied in law" with regard to the fee differential theory, the demurrer is OVERRULED, and the case may proceed accordingly.

g. **Defendants' Demurrer Regarding Claims for Punitive Damages, Interest, or Attorney's Fees and Costs Pursuant to Rule 1028(a)(4)**

At the March 6, 2014 oral argument, counsel for Plaintiffs, Jack W. Cline, Esq. conceded that the claims for punitive damages, interest, attorney's fees, and costs is contingent upon resolution of the fraud claim in Plaintiff's favor. Moreover, the Court has previously sustained a similar preliminary objection. Because this Court has sustained Defendants' Motion to Strike the fraud claim, this demurrer is also SUSTAINED.

## II. Conclusion

For the foregoing reasons, Defendant's Preliminary Objections to the Second Amended Complaint are OVERRULED IN PART AND SUSTAINED IN PART.

BY THE COURT:

_John A. Bozza_ J.
SENIOR JUDGE
John A. Bozza, Senior Judge

24